## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

**LEWIS CHAMPAGNE, II, ET AL**     **CASE NO: 14-CV-0766**

**VERSUS**                **JUDGE HAIK**

**UNION PACIFIC RAILROAD CO., ET AL**  **MAGISTRATE JUDGE HILL**

### MEMORANDUM RULING

Pending before the undersigned is the Motion to Remand with Request for Limited Discovery filed by plaintiffs, Lewis and Helena Champagne, individually and on behalf of their minor children, Lewis Champagne, III, Kobe Champagne, Teagan Champagne and Marion Champagne (the "Champagnes"), on May 8, 2014. [rec. doc. 11]. On May 29, 2014, defendant, Union Pacific Railroad Company ("Union Pacific"), filed opposition. [rec. doc. 13]. Defendant, United States Environment Services, LLC ("USES"), filed a Response to Plaintiffs' Motion to Remand on May 30, 2014. [rec. doc. 14]. The Champagnes filed a Reply Memorandum on June 5, 2014. [rec. doc. 15].

On June 24, 2014, the undersigned held a hearing in open court, in which I granted the Motion for Limited Discovery and took the Motion to Remand under advisement. [rec. doc. 20]. By Order dated July 9, 2014, I allowed plaintiffs to file a supplemental brief by August 4, 2014, with a response due within five days of service. [rec. doc. 22].

On July 16, 2014, the Champagnes filed a Supplemental Memorandum in Connection with their Motion to Remand, in which they withdrew their previous

argument that Union Pacific's removal was untimely.  [rec. doc. 25].  On July 22, 2014, USES filed a Motion to Extend Briefing Deadline [rec. doc. 28], which the undersigned granted by Order dated July 24, 2014.  [rec. doc. 29].

On September 2, 2014, the Champagnes filed a Supplemental Memorandum in Connection with the Motion to Remand.  [rec. doc. 36].  In their brief, plaintiffs withdrew their argument related to the citizenship of USES.

Accordingly, plaintiffs' sole remaining argument on the Motion to Remand is whether the parties mutually selected state court in St. Landry Parish, Louisiana, for exclusive jurisdiction and venue.  Union Pacific opposed this argument in its Response filed on September 3, 2014.  [rec. doc. 34].

## Factual Background

On February 27, 2014, the Champagnes filed an action for damages allegedly resulting from a train derailment, which occurred in the Town of Lawtell, Louisiana (the "Lawtell train derailment"), on August 4, 2013. The suit was filed in the 27th Judicial District Court, Parish of St. Landry, Louisiana.  On April 8, 2014, Union Pacific removed the suit to this Court on diversity grounds, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.[1]

---

[1]To date, 33 lawsuits arising out of the Lawtell train derailment have been removed to this Court, most of which have been consolidated into a single action, *Vallian v. Union Pacific Railroad Co.*, Docket No. 13-2435, as well as *Guillory v. Union Pacific*, Docket No. 13-2531 and *Carriere v. Union Pacific*, Docket No. 13-2437.

The Champagnes reside and crawfish (both commercially and recreationally) on property adjacent to the train derailment location.  After the accident, the Louisiana Department of Environmental Quality ("LDEQ") ordered Union Pacific to test and remediate the Champagnes' property.  Union Pacific contracted with Conestoga-Rovers & Associates, Inc. ("CRA") to conduct the testing and remediation.  USES was a subcontractor of CRA.

In November, 2013, Union Pacific and the Champagnes entered into a Property Access Agreement (the "Agreement") giving Union Pacific, its contractors and subcontractors, access to the Champagnes' property to perform the required testing and remediation made necessary by the release of lubricants from the train derailment onto portions of the Champagne's property.  [rec. doc. 13, Exhibit A].  The Agreement defines the "Purpose" of the contract as follows:

> Landowner [the Champagnes] hereby grants Union Pacific, its contractors, CRA, and sub-contractors access to the Property as requested in the premises paragraphs above for purposes of soil and groundwater investigations and testing, including the installation and maintenance of temporary groundwater monitoring wells, the plugging and abandoning of any environmental testing wells, and for any environmental activities required by the Louisiana Department of Environmental Quality ("LDEQ") or other governmental agency, any remediation efforts, including but not limited to remediation of soil and/or groundwater, excavation of soil, and backfilling of excavated soil, and all uses necessary and incidental thereto (the "Project Activities").

[rec. doc. 13, Exhibit A, ¶ I].

The Agreement provides a "Reservation of Rights" with regard to damages in favor of the Champagnes as follows:

> Landowner specifically reserves the right to claim any and all damages of any kind or character whatsoever from Union Pacific, CRA and their contractors and subcontractors arising or resulting from the Project Activities, as well as from the derailment of August 4, 2013.  Nothing herein shall be construed to limit Landowner's right to claim and receive such damages.

[rec. doc. 13, Exhibit A, ¶ V].

The Agreement contains a "Forum Selection" clause which reads as follows:

> Any controversy or dispute arising out of or relating to this Agreement shall be resolved exclusively in a Court of competent jurisdiction in the Parish of St. Landry, State of Louisiana.

[rec. doc. 13, Exhibit A, ¶IX].

It is this Forum Selection clause which provides the basis for the Champagnes' Motion to Remand.

## Analysis

The Champagnes argue that the parties consented to exclusive jurisdiction and venue in state court in St. Landry Parish by virtue of the Forum Selection clause.  Union Pacific opposes on the grounds that the Forum Selection clause does not extend to many of the Champagne's major claims against Union Pacific.

The enforceability of a forum selection clause is determined by federal law. *Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997); *Smith v. Swift Transp. Co. of Arizona, LLC*, 915 F.Supp.2d 766, 771 (W.D. La. 2013).  Federal law

controls whether a lawsuit falls within the scope of the forum selection clause, even in diversity cases.  *Ondova Co. v. Manila Indus., Inc*., 513 F. Supp. 2d 762, 772 (N.D. Tex. 2007) (*citing Jones v. GNC Franchising, Inc*., 211 F.3d 495, 497 (9th Cir. 2000)) ("In diversity cases, federal law governs the analysis of the effect and scope of forum selection clauses."); *Shale Consultants, L.L.C. v. Wilson*, 2013 WL 4750066, *3 (W.D. La. Sept. 3, 2013).

Pursuant to federal law, forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972).  Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.  *Smith v. Lucent Technologies, Inc*., 2004 WL 515769, *7 (E.D. La. Mar. 16, 2004) (*citing Haynsworth*, 121 F.3d at 963).

In this case, Union Pacific does not contend that the Forum Selection clause is unreasonable or otherwise invalid.  Instead, it asserts that the forum selection clause does not apply to the great majority of the Champagnes' claims for relief and does not require

the remand of this action to state court.

Before considering whether a forum selection clause is enforceable as urged by plaintiffs, the court must first decide whether the clause applies to the pending action. *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998).  In making that decision, the Court "must look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clause[ ]." *Id*.  "[I]f the substance of [the plaintiffs' claims], stripped of their labels, does not fall within the scope of the clause[ ], the clause [ ] cannot apply." *Smith*, 2004 WL 515769 at *7 (*quoting Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir.1993)).

Under federal law, the court must interpret the contract in such as way as to give effect to the parties' mutual intentions. *Shale Consultants*, 2013 WL 4750066 at *3 (*citing Hanak v. Talon Ins. Agency, Ltd.*, 470 F.Supp.2d 695, 706 (E.D. Tex. 2006)).  A contract also must be interpreted to give effect to all of its provisions.  *Id*. (*citing Clark v. Zapata Gulf Marine Corp., Inc*., 1990 WL 84561 (E.D. La. June 11, 1990)).

Here, this action is for damages allegedly resulting from (1) the train derailment which caused a chemical leak onto the Champagnes' property and (2) the improper remediation by Union Pacific and its contractor, USES, of their property.  Specifically, plaintiffs' claims are as follows: (1) diminution of property value against Union Pacific (¶¶ 12-13); (2) trespass against Union Pacific and USES (¶¶ 14-16); (3) failure to return the property to its previous condition prior to contamination against Union Pacific and

USES (¶¶ 17-22); (4) economic loss damages against Union Pacific (¶¶ 23-26), and (5) fear, fright and inconvenience against Union Pacific (¶¶ 27-31).

The Fifth Circuit has expressly rejected a general distinction between tort and contract claims with respect to an analysis of whether particular claims fall within the scope of a forum selection clause. *Smith*, 2004 WL 515769 at *9 (*citing Marinechance*, 143 F.3d at 221-22 ("We find no persuasive support for such a general distinction."). Instead, the Court looks to the language to the parties' contracts to determine which causes of action are governed by the forum selection clause. *Marinechance*, 143 F.3d at 222. "Examination of the merits of any of the claims or defenses need not be made." *Claimserviceprovider, Inc. v. St. Paul Travelers Companies Inc.*, 2006 WL 2989240, *4 (E.D. La. Oct. 18, 2006) (*citing Lucent*, 2004 WL 515769 at *9).

Union Pacific asserts that the Forum Selection clause does not apply to the great majority of plaintiffs' claims for relief. A review of the Agreement (quoted above) shows that its "Purpose" was to allow access to the plaintiff's property to assess physical damage to the property caused by the spill and to remediate any such damage.

A review of the complaint, styled as "Petition for Damages," makes it clear that the Champagnes are asserting claims for damages relating to the Project Activities, *as well as* from the train derailment. Furthermore, the Agreement specifically recognizes that two different claims for damage to the Champagnes' property are possible: one claim for damages resulting directly from the spill and one claim for damages caused by the

remediation, as indicated in the following provisions:

### Project Activities on the Property

All Project Activities shall be conducted in a manner that does not interfere with Landowner's activities or use or enjoyment of the Property, provided that if the Project Activities do deprive Landowner of the use or enjoyment of his property, *Landowner reserves the right to claim compensation and/or damages for same*.

### Reservation of Rights

Landowner *specifically reserves the right to claim any and all damages of any kind or character whatsoever* from Union Pacific, CRA and their contractors and subcontractors arising or resulting from the Project Activities, as well as from the derailment of August 4, 2013.  *Nothing herein shall be construed to limit Landowner's right to claim and receive such damages*.

(emphasis added).  [rec. doc. 13, Exhibit A, ¶¶ II(c), V].

The Court's review of these provisions along with the remaining provisions of the Agreement make it clear that the Agreement (and thus the Forum Selection Clause) was meant to apply *only* to damages caused by the remediation, not those caused by the spill. When asked at oral argument, counsel for the Champagnes said that he did not want some claims remanded and some claims to remain in this Court; he wanted all claims to be heard in a single forum. That makes perfect sense to the Court. Therefore, since the claims against Union Pacific for the spill are not subject to the Forum Selection Clause, remand will be denied.

8

Furthermore, the undersigned observes that a forum selection clause providing for venue in a specific parish (county) permits venue in either federal or state court, because a federal courthouse is located in that parish.  *Alliance Health Group, LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 400 (5th Cir. 2008).  In *Alliance*, the parties executed an agreement containing the following forum-selection clause: "Governing Law: This Agreement shall be governed by and construed in accordance with the laws of the state of Mississippi and *exclusive venue for any litigation related hereto shall occur in Harris County, Mississippi*."  (emphasis in original).  After a contractual dispute arose between the parties, plaintiff filed a diversity action in the United States District Court for the Southern District of Mississippi, Southern Division.  A federal courthouse for that division is located in Harrison County, the county named in the forum-selection clause.

Defendant moved to dismiss the complaint for improper venue, asserting that forum-selection clause limited filing to the state courts located in Harrison County.  The district court denied the motion, ruling that the clause could be interpreted to permit filing the action in either federal or state court; and, because the clause permitted the action to be filed in multiple fora, it was not mandatory, making filing in federal court appropriate as well.

Initially, the Fifth Circuit noted that although the clause at issue referred to venue, it had previously treated similar clauses as forum-selection clauses.  *Id*. at 399.  The Court framed the issue as whether venue was proper when the federal district court was located

9

in the specified county.  The Court held that the clause at issue, providing for venue in a

specific county, permitted venue in either federal or state court, because a federal

courthouse was located in that county.[2]

In *Alliance*, the action was filed directly in federal court, as opposed to being

removed as in this case.  However, that is of no moment.  As stated by the Fifth Circuit in

*City of New Orleans v. Mun. Admin. Servs.*, 376 F.3d 501 (5th Cir. 2004):

> For a contractual clause to prevent a party from exercising its right to
> removal, the clause must give a "clear and unequivocal" waiver of that
> right. A party may waive its rights by explicitly stating that it is doing so, by
> allowing the other party the right to choose venue, or by establishing an
> exclusive venue within the contract.
>
> A party's consent to jurisdiction in one forum does not necessarily waive its
> right to have an action heard in another. For a forum selection clause to be
> exclusive, it must go beyond establishing that a particular forum will have
> jurisdiction and must clearly demonstrate the parties' intent to make that
> jurisdiction exclusive. It is important to distinguish between jurisdiction and
> venue when interpreting such clauses. Although it is not necessary for such
> a clause to use the word "venue" or "forum," it must do more than establish
> that one forum will have jurisdiction.

*Id*. at 504 (internal citations omitted).

Here, the Forum Selection clause at issue does not contain an explicit waiver of

defendants' right to remove to federal court. Further, the parties did not establish the state

court as the exclusive venue for all disputes. Accordingly, Union Pacific did not waive its

right to remove this action for damages to federal court.

---

[2]*See also, Eastern Fishing & Rental Tool Co. Inc. v. Blaney*, 2012 WL 73234 (S.D. Miss. Jan. 10, 2012) (forum selection clause placing jurisdiction in particular Mississippi state court did not preclude removal to federal court).

## <u>Conclusion</u>

Based on the foregoing reasons, the Motion to Remand is **DENIED**.

Signed October 1, 2014, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

11